**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────

**ARACRUZ TRADING LTD.,**

                 **Plaintiff,**         **08 Civ. 3511 (JGK)**

     **- against -**          **OPINION AND ORDER**

**JAPAUL OIL AND MARITIME SERVICES, PLC,**

                 **Defendant.**
────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Aracruz Trading Ltd. ("Aracruz"), brings this action against the defendant, Japaul Oil and Maritime Services ("Japaul Oil"), for damages arising out of a maritime tort. The defendant moves to dismiss the action on three grounds: lack of subject matter jurisdiction, forum non conveniens, and lack of personal jurisdiction. The defendant also moves to vacate the attachment of its assets obtained by the plaintiff pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

I.

     The following facts and procedural history, taken from the Complaint and the affidavits and declarations submitted by the parties, are undisputed unless otherwise indicated.

     The plaintiff is a business entity organized under the laws of the Marshall Islands, with an office in Greece. (Compl. ¶

2.)   The defendant is a Nigerian corporation (Esemitodje Aff., ¶ 4), located in Port Harcourt, Nigeria (Compl. ¶ 4).   On or about February 19, 2008, the defendant's tug boat was towing a wrecked vessel, the M/T STELLAR, through the outer anchorage at Port Harcourt, Nigeria.   (Compl. ¶ 5.)   While under the defendant's control, the towed vessel struck the plaintiff's vessel, the M/T GAS AMAZON, while the latter was at anchor, causing an allision.[1] (Compl. ¶ 6.)   The plaintiff alleges that "no police, navy or maritime official contacted the vessel subsequent to the incident regarding any investigation."   (Decl. of Capt. Stockley, ¶ 43.)   The defendant, however, alleges that the Nigerian Police, Marine Division, was contacted immediately after the incident (Decl. of Capt. Grikpa, ¶ 16), and has submitted a copy of the police report.   The plaintiff subsequently filed this Complaint, claiming that the allision was a result of the defendant's negligence (Compl. ¶ 7), and that the plaintiff consequently suffered damages in the sum of $756,000.00 (Compl. ¶ 8).   The Complaint alleges that the case falls within this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.   (Compl. ¶ 1.)

The defendant moves to dismiss the Complaint on the grounds of lack of subject matter jurisdiction pursuant to Federal Rule

---

[1] "An allision is the impact of a moving vessel with a stationary vessel or other stationary object." Conti Corso Schiffahrts-Gmbh & Co. v. M/V PINAR KAPTANOGLU, 414 F. Supp. 2d 443, 444 (S.D.N.Y. 2006).

of Civil Procedure 12(b)(1), forum non conveniens, and lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Court will address each basis for dismissal in turn.


II.

In its motion to dismiss, the defendant contended that this Court lacks subject matter jurisdiction over this action because the maritime allision occurred outside the navigable waters of the United States.  In its reply brief, however, the defendant appears to concede that this Court does, in fact, have subject matter jurisdiction over this action.  This Court nevertheless has an obligation to assure that it does have subject matter jurisdiction.

In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the Complaint as true.  See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor.  Id.; Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2

3

(S.D.N.Y. Apr. 27, 2006).  Indeed, where jurisdictional facts
are disputed, the Court has the power and the obligation to
consider matters outside the pleadings, such as affidavits,
documents, and testimony, to determine whether jurisdiction
exists.  See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003);
Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d
Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011
(2d Cir. 1986).  In doing so, the Court is guided by that body
of decisional law that has developed under Federal Rule of
Civil Procedure 56.  Kamen, 791 F.2d at 1011; see also
Melnitzky v. HSBC Bank USA, No. 06 Civ. 13526, 2007 WL 1159639,
at *5 (S.D.N.Y. April 18, 2007).

     To fall within the Court's admiralty jurisdiction, a tort
action must meet two requirements: (1) "the alleged tort must
have occurred on or over 'navigable waters;'" and (2) "the
activity giving rise to the incident must have had a substantial
relationship to traditional maritime activity such that the
incident had a potentially disruptive influence on maritime
commerce."  LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir.
1999) (quoting Jerome B. Grubart, Inc. v. Great Lakes Dredge &
Dock Co., 513 U.S. 527, 534 (1995)).  "United States District
Courts have jurisdiction over admiralty controversies between
foreigners, which arise outside the United States."  Odita v.
Elder Dempster Lines, Ltd., 286 F. Supp. 547, 549 (S.D.N.Y.

4

1968); see The Belgenland, 114 U.S. 355, 365 (1885) ("[A]lthough the courts will use a discretion about assuming jurisdiction of controversies between foreigners in cases arising beyond the territorial jurisdiction of the country to which the courts belong, yet where such controversies . . . arise under the common law of nations . . . [t]he existence of jurisdiction in all such cases is beyond dispute . . . ."). The district court can decline to retain jurisdiction over an all foreign cause of action, even if there is subject matter jurisdiction to hear the case. "[R]etention of jurisdiction of a suit in admiralty between foreigners is within the discretion of the court of first instance, the exercise of such discretion being final except in case of abuse." The Mandu, 102 F.2d 459, 462 (2d Cir. 1939); see also Kloeckner Reederei und Kohlenhandel G.M.B.H. v. A/S Hakedal, 210 F.2d 754, 755-56 (2d Cir. 1954) (L. Hand, J.). To obtain dismissal, a defendant "must show that he will be unfairly prejudiced, unless [the suit] be removed to some other jurisdiction." Kloeckner, 210 F.2d at 756.

This action, which involves an allision between two vessels on navigable waters, plainly satisfies the requirements of federal admiralty jurisdiction. Moreover, the defendant has not made any showing that it will be unfairly prejudiced if this Court exercises its admiralty jurisdiction. The defendant's 12(b)(1) motion is therefore denied.

III.

The defendant moves to dismiss the Complaint pursuant to the doctrine of forum non conveniens.  "[T]he doctrine of forum non conveniens contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court."  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir.2000).  The Court of Appeals for the Second Circuit has established a three-step framework for resolving a motion to dismiss based on forum non conveniens.  The standard requires: (1) determining the degree of deference to be afforded to the plaintiff's choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947).  See Iragorri v. United Tech. Corp., 274 F.3d 65, 73-74 (2d Cir.2001) (en banc); see generally Base Metal Trading, S.A. v. Russian Aluminum, 253 F. Supp. 2d 681, 693-713 (S.D.N.Y. 2003) (applying framework), aff'd, 98 Fed. Appx. 47 (2d Cir. 2004).


(A)

As an initial matter, the Court must determine the degree of deference that should be afforded to the plaintiff's choice of forum.  See Iragorri, 274 F.3d at 70-73; accord In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak

<u>Naftogaz of Ukr.</u>, 311 F.3d 488, 498 (2d Cir. 2002); <u>Base Metal
Trading</u>, 253 F. Supp. 2d at 693.  The Supreme Court in <u>Gilbert</u>
generally instructed that "unless the balance is strongly in
favor of the defendant, the plaintiff's choice of forum should
rarely be disturbed."  <u>Gilbert</u>, 330 U.S. at 508.  The Court of
Appeals for the Second Circuit has interpreted <u>Gilbert</u> to mean
that "a court reviewing a motion to dismiss for forum non
conveniens should begin with the assumption that the plaintiff's
choice of forum will stand unless the defendant meets the burden
of demonstrating" the factors discussed below.  <u>Iragorri</u>, 274
F.3d at 71; <u>Concesionaria DHM, S.A. v. Int'l Fin. Corp.</u>, 307 F.
Supp. 2d 553, 561-62 (S.D.N.Y. 2004).

     As the Court of Appeals explained in <u>Iragorri</u>, the degree
of deference varies depending on the circumstances.  While
plaintiffs who file suit in the district in which they reside
are entitled to great deference, less deference is owed to
foreign citizens suing in the United States and United States
residents suing outside their home forum.  <u>Iragorri</u>, 274 F.3d at
71.  The Court of Appeals has announced a sliding scale approach
where the "more it appears that a domestic or foreign
plaintiff's choice of forum has been dictated by reasons that
the law recognizes as valid, the greater the deference that will
be given to the plaintiff's forum choice."  <u>Id.</u>  The key to the
analysis is distinguishing between a plaintiff's legitimate

right to select a forum and mere forum-shopping that is designed

to burden the defendants or to give the plaintiff a tactical

advantage.  See id. at 72-73.  Therefore,

> the greater the plaintiff's or the lawsuit's bona fide
> connection to the United States and to the forum of
> choice and the more it appears that considerations of
> convenience favor the conduct of the lawsuit in the
> United States, the more difficult it will be for the
> defendant to gain dismissal for forum non conveniens.
> . . .  On the other hand, the more it appears that the
> plaintiff's choice of a U.S. forum was motivated by
> forum-shopping reasons . . . the less deference the
> plaintiff's choice commands. . . .

Id. at 71-72 (footnotes omitted); see also F.D. Import & Export

Corp. v. M/V Reefer Sun, No. 02 Civ. 2936, 2003 WL 21396658, at

*3 (S.D.N.Y. June 17, 2003) ("In sum, courts should give greater

deference to the plaintiff's chosen forum when the choice is

based on legitimate factors . . . and give less deference when

the plaintiff is seeking a tactical advantage that may result

from peculiar conditions. . . .").  Examples of impermissible

factors upon which to base choice of forum include "attempts to

win a tactical advantage resulting from local laws that favor

the plaintiff's case, the habitual generosity of juries in the

United States or in the forum district, the plaintiff's

popularity or the defendant's unpopularity in the region, or the

inconvenience and expense to the defendant resulting from

litigation in that forum . . . ."  Iragorri, 274 F.3d at 72.

In this case, the plaintiff's choice of forum does not appear to have been based on impermissible considerations and is therefore entitled to some deference.  This is a non-jury case and the plaintiff's choice was therefore not motivated by the size of a potential jury award.  See, e.g., id.; Niv. v. Hilton Hotels Corp., No. 06 Civ. 7839, 2008 WL 4849334, at *3 (S.D.N.Y. Nov. 10, 2008) (granting less deference to plaintiff's choice of forum that appeared to rest in part on "the generosity of juries in this district").  The plaintiff's choice of this forum appears to rest primarily on its ability to attach assets of the defendant that pass through this district pursuant to Rule B, a consideration that does not bear the imprimatur of forum shopping.  See, e.g., Gilbert, 330 U.S. at 508 (listing "the enforceability of a judgment if one is obtained" as an important factor to consider); Cargill v. Esal (Commodities) Ltd., No. 84 Civ. 0841, 1984 WL 1424, at *2 (S.D.N.Y. Apr. 6, 1984) (suggesting that "adequate assurance that any judgment plaintiff may recover will be collectible" was a legitimate consideration in plaintiff's choice of forum and conditioning dismissal on forum non conveniens on adequate assurance of the collection of any judgment).

Nevertheless, as a foreign business entity with no ties to the United States, the plaintiff's choice of forum is entitled to less deference than if the plaintiff were a resident or

citizen of the United States suing in its home forum.  <u>Iragorri</u>,
274 F.3d at 71; <u>see also</u> <u>In re Royal Group Techs. Secs. Litig.</u>,
No. 04 Civ. 9809, 2005 WL 3105341, at *2 (S.D.N.Y. Nov. 21,
2005) (granting Canadian plaintiffs "less deference than that
due a resident plaintiff").  The plaintiff's choice of forum
also seemingly bears no "bona fide connection" to the events
giving rise to this lawsuit, and consequently commands less
deference.  <u>Iragorri</u>, 274 F.3d at 72; <u>see also</u> <u>Royal Group
Techs.</u>, 2005 WL 3105341, at *2 (noting "the named plaintiffs'
lack of bona fide connections to this district" in granting less
deference).  In sum, the plaintiff's choice of forum here is
entitled to a relatively low degree of deference.


                              (B)

     The second step in the <u>Iragorri</u> framework requires the
defendant to identify an adequate alternative forum where the
defendant is amenable to process.  <u>See</u> <u>Piper Aircraft Co. v.
Reyno</u>, 454 U.S. 235, 254 n.22 (1981); <u>Base Metal Trading</u>, 253 F.
Supp. 2d at 698.  Ordinarily, this requirement "will be
satisfied when the defendant is 'amenable to process' in the
other jurisdiction.  In rare circumstances, however, where the
remedy offered by the other forum is clearly unsatisfactory, the
other forum may not be an adequate alternative . . . ."  <u>Aguinda
v. Texaco, Inc.</u>, 303 F.3d 470, 476-77 (2d Cir.2002) (quoting

Piper, 454 U.S. at 255 n.22).  For the purposes of this case,
the defendant has consented to suit in Nigeria.  (Def.'s Mem. in
Support of Its Mot. to Dismiss, at 7-8.)  Nigeria is thus an
"available" alternative forum.  The disputed issue is whether
Nigeria is an "adequate" alternative forum.

The plaintiff does not appear to contend that Nigeria does
not provide adequate judicial remedies for the type of action
involved in this litigation.  Instead, the plaintiff asserts
that Nigeria is not an adequate alternative forum because of the
alleged rampant danger, corruption, and lawlessness of the
region.  The plaintiff has pointed primarily to the following in
support of its allegation that Nigeria is an inadequate forum:
(1) a travel warning from the United States Department of State
advising United States citizens against travel to Nigeria
because of the very high risk of kidnapping, robbery, and other
armed attacks, U.S. Dept. of State, Travel Warning,
http://travel.state.gov/travel/cis_pa_tw/tw/tw_928.html (last
visited Feb. 18, 2009); (2) the inability of the plaintiff's
marine surveyor to reach the damaged AMAZON until two weeks
after the allision, due to suspension of the launch service
after the launch master was murdered by armed gangs, (Stockley
Decl., ¶¶ 23-24); (3) a decree issued by the Filipino government
forbidding deployment of workers to Nigeria, (Stockley Decl., ¶

36); and (4) Nigeria's second-place ranking on a list of most corrupt countries.[2]

"Courts may, of course, properly consider the safety of litigants when ruling on a motion to dismiss for forum non conveniens." BFI Group Divino Corp. v. JSC Russian Aluminum, 481 F. Supp. 2d 274, 284 (S.D.N.Y. 2007) (citing HSBC USA, Inc. v. Prosegur Paraguay, S.A., No. 03 Civ. 3336, 2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004)).  In HSBC, Judge Preska found that Paraguay was not an adequate alternative forum because of the specific risk of violence against parties affiliated with the litigation.  See HSBC, 2004 WL 2210283, at *3.  In that case there was a history of threats to the plaintiff's investigator; five people connected with the case or its investigation were murdered; and there was reason to question the ability of the foreign legal system to adjudicate the case fairly.  Id.  The court in BFI, by contrast, found Nigeria to be an adequate alternative forum and held that HSBC was inapposite because "unlike the plaintiff in HSBC, plaintiff [in BFI] has not offered evidence of violence directed toward this litigation or individuals connected with this case." BFI Group Divino Corp. v. JSC Russian Aluminum, 247 F.R.D. 427, 432 (S.D.N.Y. 2007)

---

[2] This list comes from a declaration filed in connection with unrelated litigation, which alleged that "[i]n 2003, Paraguay was ranked the fourth most corrupt country in the world (behind Bangladesh, Nigeria, and Haiti)." HSBC USA, Inc. v. Prosegur Paraguay, S.A., No. 03 Civ. 3336, 2004 WL 2210283, at *3 (S.D.N.Y. Sept. 30, 2004).

(denying plaintiff's motion for relief from previous judgment granting dismissal on forum non conveniens grounds) (internal quotation marks omitted).

In this case, as in BFI, there is an insufficient showing to warrant a conclusion that Nigeria is an inadequate alternative forum for this lawsuit.  Specifically, the plaintiff has offered only generalized statements regarding instability in the region in support of its safety argument.  BFI, 481 F. Supp. 2d at 284.  The bulk of the defendant's allegations of violence relate to other parts of Nigeria.  The most pertinent allegation of danger here relates to the murder of the launch captain.  The plaintiff does not allege, however, that this act of violence bears any connection to the present litigation.  Conclusory allegations of general danger are insufficient. See BFI, 481 F. Supp. 2d at 284; see also Niv, 2008 WL 4849334, at *7 (refusing to find Egypt to be inadequate alternative forum where "[p]laintiffs [did] not point[] to any hostility targeted at this litigation or individuals connected with this case").

The allegations of danger are particularly strained in this case because the plaintiff was prepared to do business in Nigeria and the allision occurred off the coast of Nigeria.  The defendant also points out that while there is violence in the Niger Delta, that is less true in Port Harcourt where the

Federal High Court sits and where a substantial number of foreigners including Americans reside.  (Grikpa Decl., ¶ 14.)

Moreover, the plaintiff's allegation of corruption is similarly unpersuasive.  "The 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record."  Eastman Kodak Co. v. Kavlin, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) (collecting cases); see also Monegasque, 311 F.3d at 499; Blanco v. Banco Industrial de Venezuela, S.A., 997 F.2d 974, 981-82 (2d Cir. 1993); Base Metal Trading, 253 F. Supp. 2d at 706; Abdullahi v. Pfizer, Inc., No. 01 Civ. 8118, 2002 WL 31082956, at *8-9 (S.D.N.Y. Sept. 17, 2002) (collecting cases), vacated in part, 77 Fed. Appx. 48 (2d Cir. 2003).  The plaintiff here provides no support for its allegation of corruption other than its reference to a declaration submitted in connection with an unrelated case concerning Paraguay.  See HSBC, 2004 WL 2210283, at *3.  This conclusory allegation does not demonstrate that the plaintiff cannot obtain relief within the Nigerian courts.  See Monegasque, 311 F.3d at 499 (holding that the plaintiff's "meager and conclusory" allegations of corruption in Ukraine, coupled with its willingness to conduct business with a Ukrainian company, precluded a finding "that the courts of Ukraine constitute an inadequate alternative forum").

Accordingly, the defendant has shown that Nigeria is an adequate alternative forum for this litigation.


(C)

Having considered the plaintiff's choice of forum and having found Nigeria to be an adequate alternative forum, the Court now weighs the remaining private and public interest factors set forth by the Supreme Court in Gilbert, 330 U.S. at 508-09. The private factors to be considered in this case are 1) the relative ease of access to sources of proof; 2) the convenience of willing witnesses; 3) the availability of compulsory process for attaining the attendance of unwilling witnesses; and 4) the other practical problems that make trial easy, expeditious, and inexpensive. See Gilbert, 330 U.S. at 508; accord Aguinda, 303 F.3d at 479. "In applying these factors, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." Monegasque, 311 F.3d at 500 (internal quotation marks omitted).

The private factors in this case counsel dismissal for forum non conveniens in favor of Nigeria. All relevant events occurred in Nigeria. (Compl. ¶¶ 5-7; Esemitodje Aff., ¶ 3; Akakwam Aff., ¶¶ 4, 9.) All of the defendant's witnesses are

15

located in Nigeria, including the defendant's captain and the
police inspector who investigated the accident.  (Akakwam Aff.,
¶ 10.)  Although the plaintiff contends that it will be unable
to bring its chief witnesses, who are all Filipino, to Nigeria
for purposes of this litigation due to the Filipino government's
decree (Stockley Decl., ¶¶ 36-38), this argument rings hollow in
light of the fact that these witnesses were present in Nigeria
at the time of the incident.  In any event, the witnesses are
not located in the United States and their testimony will have
to be preserved for trial, unless they choose to appear, and the
United States is not a more convenient forum than Nigeria for
those witnesses.[3] These factors point decidedly toward a forum
non conveniens dismissal in favor of litigation in Nigeria for
the sake of convenience and efficiency.  This Court is an
inconvenient forum for all of the witnesses.  There is no
suggestion that any witness resides in this jurisdiction.

Similarly, an assessment of the public interest factors
also counsels in favor of dismissal for forum non conveniens.
The public interest factors to be evaluated are 1) court
congestion; 2) avoiding difficult problems in conflict of laws
and the application of foreign law; 3) the unfairness of
imposing jury duty on a community with no relation to the case;

---

[3] At argument, the defendant agreed that if any witnesses were unavailable for
live testimony in Nigeria the defendant would consent to admitting their
testimony, preserved by acceptable means such as deposition.

and 4) the interest of communities in having local disputes decided at home.  See Gilbert, 330 U.S. at 509; Aguinda, 303 F.3d at 480.  This litigation bears no connection to the United States other than the fact that the defendant moves funds through New York.  Nigeria has a greater interest than New York in settling a maritime dispute arising from possible negligence in its own waters.

Based on the lower degree of deference due to a foreign plaintiff suing in the United States, the availability of Nigeria as an adequate alternative forum, and an evaluation of all the private and public Gilbert factors, Nigeria is clearly the more convenient forum.  Dismissal on the grounds of forum non conveniens is therefore warranted.


IV.

In its motion to dismiss, the defendant originally contended that this Court lacks personal jurisdiction.  Although the defendant later conceded that this Court has quasi in rem jurisdiction by virtue of the Rule B attachment, it urged this Court to vacate the attachment upon dismissal of this action for forum non conveniens.

Rule B is "a jurisdictional provision intended to provide district courts with *quasi-in-rem* jurisdiction over a maritime defendant which is not found within the district because it is

17

not geographically located there and the district court does not
otherwise have personal jurisdiction over it." DSND Subsea AS
v. Oceanographia, S.A. de CV, 569 F. Supp. 2d 339, 348 (S.D.N.Y.
2008) (internal citations and quotation marks omitted).  The
Supreme Court has explained that a Rule B attachment also serves
the secondary purpose "to assure satisfaction in case the suit
is successful."  Swift & Co. Packers v. Compania Colombiana Del
Caribe, S.A., 339 U.S. 684, 693 (1950).

Courts in this and other districts have upheld Rule B
attachments that were intended to provide security for
enforcement of foreign judgments.  See, e.g., Polar Shipping
Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 633 (9th Cir.
1982) (holding in the context of a forum selection clause that a
district court, "instead of unconditionally dismissing the
action, may ensure the availability of security pending a
determination of the merits in the [foreign] forum"); Sea
Transport Contractors, Ltd. v. Indus. Chemiques du Senegal, 411
F. Supp. 2d 386, 395 (S.D.N.Y. 2006) (explicitly adopting the
Ninth Circuit's Polar Shipping holding and allowing Rule B
attachment in aid of foreign litigation and arbitration);
Staronsett Shipping Ltd. v. North Star Nav. Inc., 659 F. Supp.
189, 190-91 (S.D.N.Y. 1987) (adopting the Polar Shipping holding
and allowing Rule B attachment to satisfy judgment in action
that was transferred on consent to neighboring district); but

18

see SMT Shipmanagement & Transport Ltd. v. Maritima Ordaz C.A., No. 00 Civ. 5789, 2001 WL 930837, at *11-12 (S.D.N.Y. Aug. 15, 2001) (vacating Rule B attachment where writ was properly granted but case was dismissed on forum non conveniens grounds, because "the sole reason for a Rule B attachment is to obtain jurisdiction, whatever other ancillary benefits it may have in terms of providing provisional security for any future judgment").  The Polar Shipping court explained that a "district court should exercise its jurisdiction only to the extent necessary to ensure that the plaintiff has an adequate remedy." 680 F.2d at 633.

Here, the defendant concedes that the Rule B attachment was validly executed.  The plaintiff has obtained security to satisfy a potential judgment against the defendant in accordance with Rule B.  This Court therefore denies the defendant's motion to vacate the attachment.

The defendant argues that it is prepared to post a bond and provide adequate security and that the amount of the Rule B attachment is excessive.  However, the defendant has not made a motion to reduce the amount of the attachment and has not presented evidence as to the proper amount of the attachment.

As explained above, the defendant is entitled to a conditional dismissal on the grounds of forum non conveniens. This dismissal is conditioned on the defendant agreeing to

jurisdiction for the claim against it in Nigeria. It is also
conditioned on the maintenance of the Rule B attachment or other
alternative reasonable security to protect the plaintiff and
assure that any judgment in Nigeria is collectable. If the
defendant contends that the amount of the Rule B attachment is
too high, it can move to reduce it or to substitute other
reasonable alternative security.

### Conclusion

For the reasons explained above, the defendant's motion to
dismiss pursuant Rule 12(b)(1) of the Federal Rules of Civil
Procedure is **denied**. The defendant's motion to dismiss pursuant
to the doctrine of forum non conveniens is **granted**, subject to
the conditions explained above. The defendant's motion to
vacate the Rule B attachment is **denied**.

The Clerk is directed to close Docket No. 7 and enter
judgment in accordance with this opinion, dismissing the
Complaint without prejudice subject to the conditions explained
above and closing the case.

**SO ORDERED.**

**Dated: New York, New York**
       **March 13, 2009**

John G. Koeltl
United States District Judge

20